BARUTIO, Appellant, vs. DOWLING, Respondent.

*February 12—March 10, 1925.*

*Automobiles: Collisions at street intersections: Duty of driver to observe traffic as well as traffic officer: Question for jury.*

1. If the evidence in a personal injury action is conflicting, or, if not, if the inferences to be drawn therefrom are doubtful and uncertain, the question of negligence is for the jury. p. 424.

2. The driver of an automobile who has stopped at a street intersection and is awaiting the signal of an officer in charge of the traffic to proceed must observe not only the actions of the officer but the condition of the highway with respect to vehicles and pedestrians. p. 424.

3. The question as to whether the defendant was negligent in colliding with the plaintiff pedestrian at a busy street intersection, when had he looked in front of him instead of centering his attention on the traffic officer the defendant could readily have seen the plaintiff, is for the jury. p. 425.

APPEAL from a judgment of the circuit court for Racine county: E. B. BELDEN, Circuit Judge. *Reversed.*

*A. W. Richter* of Milwaukee, for the appellant.

For the respondent there was a brief by *Whaley, Erikson & Paulsen* of Racine, and oral argument by *Vilas H. Whaley.*

DOERFLER, J.    The action is one for personal injuries. Sixth street runs north and south in the city of Milwaukee and is intersected by Sycamore street.    Fifth street runs parallel with Sixth street, and is the distance of an ordinary city block east of Sixth street.    From Fifth street to Sixth street, Sycamore street runs up an incline of about forty-five degrees to the west.    The highest point of this incline culminates at the east line of the east north-and-south crossing of Sixth street.    A traffic officer was stationed north of the center of the intersection of Sixth street and Sycamore street, and while facing the west was directing the north-and-south-bound traffic.    The defendant was driving west

on Sycamore street in an automobile, and had stopped just east of the east line of said north-and-south crossing, awaiting the signal of the traffic officer for the resumption of the east-and-west traffic.  On either side of defendant's car, and in the rear thereof, other cars had also stopped awaiting the signal of the officer.  At the southeast corner of the intersection of these two streets the Chicago, North Shore & Milwaukee Railroad maintains its. passenger depot, and shortly before the accident the plaintiff, together with numerous other passengers, was crossing north on Sycamore street on the east crossing at the time aforesaid.  When the plaintiff arrived in close proximity to where defendant's car was located, the traffic officer turned to the south and gave the signal for the east-bound traffic to proceed, and when he was about to signal the west-bound traffic he observed the collision between defendant's car and the plaintiff.  Defendant's car started to move at a slow rate of speed and was stopped within a few feet after striking the plaintiff.

The plaintiff's testimony, in part, is as follows:

"All cars were standing still at the east side of Sycamore street.  I saw the two cars stop there; there may have been more behind them, but the two were all that I could see. They were standing still, as they had not yet received a signal to go ahead.  Many people had crossed ahead of me. I believe I was about the last to cross over.  The officer was directing the traffic going the way I was going, north and south.  I was walking on the regular crosswalk, and had almost passed the car that struck me.  I should say I was between three and four feet in front of the car when it started to move, and I was knocked down, having been struck by the bumper of the car.  As the traffic officer started to turn around to give the signal to the east-and-west traffic, he saw me lying on the crosswalk and came over to help pick me up."

The traffic officer testified in part as follows:

"The traffic was moving north and south, and the last vehicle had gone north, when I started to turn around and give this traffic that was ready to go east-bound the signal

to go ahead, but I did not give any signal to the traffic west-bound because I had not completely turned around when I saw the accident. Just as I turned I saw the man fall. I didn't see exactly how the accident happened because it happened while I was turning. . . . I talked to the defendant; . . . he said he was sorry it happened, that he had not been looking and didn't see the man in front of his machine."

The defendant, called adversely, testified: "I was not paying any attention to pedestrians passing. I was watching the traffic officer at the time."

Upon this evidence the court granted the motion of the defendant for a nonsuit.

From this evidence it appears that while the plaintiff was attempting to cross in front of the defendant's automobile at a time when the traffic officer had not yet given the signal to the west-bound traffic, he was struck by defendant's automobile. The defendant admitted that he was not looking for pedestrians and that he did not see the plaintiff. The facts as so disclosed by the evidence clearly presented an issue to be submitted to the jury as to the defendant's alleged negligence. If the evidence in a personal injury action for negligence is conflicting, or, if not, if the inferences to be drawn therefrom are doubtful and uncertain, the question of negligence is for the jury. *Friedrich v. Boulton,* 164 Wis. 526, 159 N. W. 803; *Harris v. Cameron,* 81 Wis. 239, 51 N. W. 437; *Orttel v. C., M. & St. P. R. Co.* 89 Wis. 127, 61 N. W. 289.

Plaintiff at the time of the collision was proceeding on the north-and-south crossing while traffic was moving in the same direction. It was not only incumbent upon the defendant, when starting his automobile, to observe the actions of the traffic officer, but also the condition of the highway in front of him with respect to vehicles and pedestrians. While the plaintiff was passing in front of him, and while in a position where he could readily have been seen had the defendant looked, defendant centered his whole attention

upon the officer and did not see the plaintiff. A situation as thus presented is necessarily fraught with great danger to pedestrians, and such danger should be anticipated. Whether the defendant acted negligently in the matter, under all the facts and circumstances in the case, presented a proper jury issue, and we so hold.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions for further proceedings in accordance with this opinion.