FINKELSTEIN and wife, Plaintiffs: MAJESTIC REALTY CORPORATION, Appellant, vs. BRANT and another, Respondents.

*March 7—April 2, 1929.*

528

529

For the appellant there was a brief by *James E. Coleman,* attorney, and *Wm. J. McCauley,* of counsel, both of Milwaukee, and oral argument by *Mr. Coleman.*

For the respondents there was a brief by *Shaw, Muskat & Sullivan,* attorneys, and *John S. Barry,* of counsel, all of Milwaukee, and oral argument by *Mr. Barry.*

DOERFLER, J. The owner in this case insists that under the evidence adduced it must be held as a matter of law that it is not liable herein; that the balcony was not defective at the time the accident happened; that it complied with its duties in law, in having a periodical inspection made of this balcony, and that as a result of such inspections no defect was discovered; that if a defect existed, the same was merely a latent defect, for which in law it could not be held liable. On the other hand, it is argued by the contractors that the terra cotta which was loosened and of which a part fell, causing the injuries, was cracked and broken, and that such defective condition was plainly visible to the naked eye; that if the owner actually made inspections of the balcony, such inspections were superficial and inadequate; that the building in question had been constructed about twenty years prior to the happening of the accident, and that by reason of the action of the elements over such a long period of time, the cracks and imperfections were wrought; that the imperfections were of such a gross nature that the terra cotta could be dismembered by a slight application of force, and that the evidence discloses beyond contradiction that immediately after the accident pieces of the defective terra cotta could be removed with the hand.

The issue, therefore, upon this branch of the case involves merely a question of fact, and therefore presented a clean-cut jury issue; and we are of the opinion that the evidence

almost conclusively establishes the correctness of the contractors' allegations in that regard. The photographs introduced in evidence clearly reveal the existence of these defects. The cracks were numerous, and permeated the entire terra cotta from which the piece fell. These cracks were visible, and were shown by black marks appearing upon the exterior of the terra cotta, indicating that soot and dirt had entered, creating such marks, and further, the surfaces exposed upon the removal of pieces of terra cotta demonstrated that the soot and dirt in the course of time had entered these cracks and covered the same to a very large extent. This being so, the negligence of the owner must be deemed to have been satisfactorily established by the verdict of the jury. If these cracks were visible upon an inspection of the terra cotta (and there is ample evidence to support the claim that they were), then the defects cannot be deemed as latent, and the jury duly passed upon the question of whether they were latent or not in its answer to the second question of the special verdict, in which it was found that the defective condition existed for such a period of time that the owner, in the exercise of ordinary care, ought to have discovered them in time so as to remedy the defects and thus avoid the injury.

In an extensive note which appears in 7 A. L. R. p. 205 and subsequent pages, the cases in the various courts, under which a defendant owner may be found negligent under facts and circumstances existing as in the instant case, have been cited and digested. From such decisions the learned editor of these notes arrives at the following conclusion:

"A building abutting on a highway must be so constructed and maintained that it will not fall and injure persons lawfully on the highway. While the owner or person in control of such a structure is not an insurer, he is bound to use reasonable care and skill in the construction and maintenance of the building, and he is obliged to inspect from time to time."

The rule as thus declared would appear to us elementary. Its existence is necessary for the due protection of the life and limbs of travelers upon the public highway, and a contrary rule would result in a denial of a lawful remedy which an injured person should have under circumstances existing like in the case at bar.

Did the owner discharge its obligations by a periodical inspection of the balcony? There was evidence in the case that the assistant superintendent of the building, a short time prior to the accident, had made an inspection of the balcony in order to ascertain whether there was an accumulation of snow and ice, and also whether any portion of the balcony had become defective; and that upon such occasion he did not discover any cracks in the terra cotta. A careful reading, however, of this testimony is persuasive that the primary object of such inspection was not to discover defects, but to ascertain whether icicles had formed and whether the water properly had flowed from the balcony, and that the inspection, if any, as to defects was merely incidental. In view of the convincing evidence with respect to the condition of the balcony, found after the accident, the jury was fully warranted in finding as it did in its answer to the second question of the special verdict, that in the exercise of ordinary care the defects could have been discovered.

We now come to the principal issue in the case, which involves the alleged negligence of the contractors. In that regard reliance is first placed upon the testimony of one Richards, who was located upon the sidewalk adjoining the building, and engaged in pulling one of the ropes used in elevating the swinging platform. The owner claims that the swinging of the staging could have been avoided by an attachment of a third rope, which when properly operated would not only prevent the swinging of the platform, but would permit the elevation of the same in such a manner as to prevent its

coming in contact with any portion of the building, and particularly protrusions therefrom. We have carefully considered the testimony of Richards, and while reference is made to a third rope, we cannot say that his testimony in that regard is sufficiently satisfactory to base a rational conclusion thereon to the effect that either the swinging or the contact with the building or protrusions could be prevented. In other words, his testimony upon the subject is largely speculative.

There was testimony on the part of contractors' witnesses tending to show that this swinging platform was raised in the usual manner in which platforms of this kind under similar circumstances are raised. Both of the men engaged in pulling the ropes also testified that the ropes were kept on the inside of the stage, next to the building, and that this was done in order to prevent contact with the building. There was also testimony that in the operation of raising a platform like the one in question the stage would be liable to swing.

One Peters, a witness for the owner, who occupied a position on the north side of Grand avenue, and who had observed the raising of the swinging stage for some period of time immediately prior to the accident, testified that one of the ropes was located on the side of the platform farthest away from the building, and that the other rope passed between the platform and the building; and that this was not only an improper practice, but that it would be conducive to produce swinging. He also testified that when the platform arrived at the balcony it came in contact with the lower part thereof, and that the workmen jerked the ropes with the result that the platform was released, and then violently came in contact with the portion of the balcony which was broken and from which a piece was severed, which fell and resulted in the injuries. This testimony of Peters was contradicted by the testimony of the two workmen who were engaged in pulling the ropes, so that it be-

comes clear that an issue of fact was raised for the jury to determine, and such issue having been resolved by the jury in favor of the contractors, its verdict cannot be disturbed. *Ruck v. Milwaukee B. Co.* 148 Wis. 222, 134 N. W. 914; *Barutio v. Dowling,* 186 Wis. 422, 202 N. W. 687.

It is next urged by counsel for the owner that the defective condition of the balcony was not the proximate cause of the accident; that it was a remote cause; that the balcony, in the condition in which it was prior to the accident, could have been permitted to remain as it was for an indefinite period without producing any detrimental results, and that it would have so continued had not the employees of the contractors so operated the staging as to bring it in contact with that portion of the balcony which became broken; that therefore an intervening cause, viz. the negligence of the contractors, constitutes the proximate cause of the injury. It is conceded by counsel for the defendants in the stipulations above referred to, that one of the defendants or both were negligent. This contention on the part of counsel for the owner requires no further consideration, excepting to say that the contractors were expressly absolved from being guilty of negligence in the premises. We will, however, add that an owner of a building like the Majestic Building, fourteen stories in height, and abutting on a public highway which constitutes the principal business thoroughfare of a city like Milwaukee, which is traversed by thousands of members of the public, who enters into a contract with an independent contractor for the performance of a painting and cleaning job, must anticipate that in raising a swinging platform over a balcony like the one that gave way, the same will occasionally swing and come in contact with parts of the building. No notice of any defect was given to either the contractors or their employees, and the testimony is conclusive that they were unaware of the existence of such defects. The jury found that, had a proper inspection been made prior to the accident, the defect could

have been remedied before the accident occurred. Therefore the owner was not only guilty of negligence, as was found by the jury, but such negligence constituted the proximate cause of the injuries.

In 45 Corp. Jur. p. 930 it is said:

"The intervening act or agency must have been one which could not reasonably have been anticipated by the primary wrongdoer, and must have superseded the original act or been itself responsible for the injury. It has been said that it is not the lawful but the wrongful or negligent act of the third person which relieves the original wrongdoer of the consequences of his negligence. In any event, if the original act is wrongful and would naturally, according to the ordinary course of events, prove injurious to others, and does result in injury through the intervention of other causes not wrongful, the injury will be referred to the wrongful cause, passing through those which were innocent."

In *Pyers v. Tiers,* 89 N. J. L. 520, 521, 99 Atl. 30, it is said:

"An intervening cause, in order to relieve from liability, must itself be a wrongful cause—that is, a cause for which the producer thereof would himself be liable to the plaintiff."

Counsel for the owner further construe the portion of the contract quoted in the statement of facts, constituting the acceptance of the contractors, to mean that the agreement to furnish public liability insurance requires insurance under which the contractors would assume all liability during the performance of the contract, resulting from the negligence of the owner. It is further urged that unless the clause in question is so construed, the owners would have no interest whatever therein.

Here it must be borne in mind, however, that operations like those involved in the elevation of a swinging stage, under circumstances like those existing in the instant case, are connected with extreme danger as far as the traveling public is concerned. It is conceded that the contractors were

independent contractors, and that ordinarily the owner cannot be held liable for the negligent acts of such contractors. On the other hand, it is also clear that there are exceptions to the general rule, which consist of cases like the one herein involved, where the work itself is inherently dangerous to the public traveling upon the highway. 14 Ruling Case Law, "Independent Contractors," §§ 23, 24; *Carlson v. Stocking,* 91 Wis. 432, 65 N. W. 58; *Smith v. Milwaukee B. & T. Exchange,* 91 Wis. 360, 64 N. W. 1041. Therefore, if the injuries had resulted from the negligent act of the contractors, the owner would be jointly liable with them. But the jury has expressly absolved the contractors from negligence, and therefore the liability must rest solely upon the owner. How the language in question, contained in the contract, could be rationally construed as an obligation on the part of the contractors to assume all responsibility for the sole negligence of the owner, is beyond our comprehension. To import a meaning such as is contended for by the learned counsel for the owner would require, to say the least, a clear and definite provision to that effect. 11 L. R. A. N. s. 1173; 12 A. L. R. 1409, note.

We cannot say that the parties to this and to the other three actions referred to in the statement of facts are subject to any proper criticism by reason of the stipulations entered into; on the contrary, as far as we are able to perceive, such stipulations are highly commendable. They tend to relieve the court of much unnecessary litigation. A remedy designed to promote the administration of justice must be speedy, and this is accomplished by the stipulations. Such a stipulation is all the more commendable in view of the unfortunate injuries sustained by the plaintiffs and others in the various actions above referred to.

*By the Court.*—The judgment of the lower court is affirmed.