DUNHAM, Respondent, vs. HOWARD INDUSTRIES, INC., Appellant.*

*September 14—October 12, 1948.*

* Motion for rehearing denied, with $25 costs, on December 15, 1948.

For the appellant there were briefs by *Weisman & Weisman* and *J. M. Weisman,* all of Racine, and *Miller, Mack & Fairchild, Joseph E. Rapkin,* and *Thomas E. Fairchild,* all of Mil-

waukee, and oral argument by *Mr. Rapkin, Mr. Fairchild,* and *Mr. Weisman.*

For the respondent there were briefs by *Foley & Foley* of Racine, and oral argument by *Jerome J. Foley, Sr.,* and *Jerome J. Foley, Jr.*

ROSENBERRY, C. J. At the times involved the Electric Motor Corporation, hereinafter referred to as "E.M.C.," was a Wisconsin corporation manufacturing fractional electric motors at Racine. The plaintiff was at different times president and general manager of the corporation. He was until 1943 its principal stockholder and was the organizer of the corporation.

On July 27, 1945, E.M.C., by its proper officers (not authorized by the board of directors) gave an option to Ben and Art Schaefer to purchase all of the assets of E.M.C., including unfilled orders on hand, but excepting cash, securities, and accounts receivable and payable. The purchase price was $100,000, and it was provided that a payment of $9,900 should be made when the option was accepted. By its terms the option expired at 6 p.m., September 1, 1945. On August 24, 1945, the Schaefers assigned the option to Howard Aircraft Corporation, hereinafter referred to as "defendant." On August 27, 1945, the defendant accepted the option. The material part of the acceptance is as follows:

"Pursuant to a provision of said option, Howard Aircraft Corporation, as the assignee of Ben G. Schaefer and Arthur E. Schaefer, have elected to exercise their exclusive right or privilege to purchase the property, rights, patents, equipment and contracts owned by you and set forth in said option and to purchase the same. Accordingly, Howard Aircraft Corporation hereby notifies you in writing of its election to make said purchase.

"We are prepared to make the payments and give the note as designated in the option and to execute such documents as are necessary to give effect to this sale immediately. We

understand that this matter may be completed and delivery given in the next day or two."

No payment was made at time of acceptance.

On September 1, 1945, E.M.C. and Howard T. Haas, agent for the defendant, entered into a contract dated August 31, 1945. After the names of the parties occurred the following recital:

"Witnesseth: That whereas the party of the first part [E.M.C.] is selling its physical assets, consisting of machinery, inventory, tools, dyes, and so forth, to the party of the second part [defendant] for and in consideration of the payment of one hundred thousand dollars ($100,000); and whereas the parties desire to have a written understanding of various matters that have arisen since the commencement of negotiations for the sale of said property."

Paragraph 10 of the contract provided:

"Party of the second part assumes and agrees to pay all commissions due salesman at the prevailing rates on orders received by Electric Motor Corporation on or prior to this date, and subsequently shipped by party of the second part and collected therefor. Rates to mean those paid at time of taking orders."

On the same day E.M.C. executed and delivered to Haas a bill of sale of the property described in the option, including a covenant that E.M.C. would not engage in a similar competitive line for a period of ten years. While the contract and bill of sale were dated August 31, 1945, they were in fact executed and delivered on September 1, 1945.

On September 6, 1945, Haas transferred his interest in the property described in the option and bill of sale to the Howard Aircraft Corporation, which later changed its name to Howard Industries. At the time of the transfer to Haas E.M.C. had on hand certain orders which it had received from its salesmen, among whom the plaintiff claims he was one.

The defendant subsequently filled some of these orders, canceled or transferred others. This action was begun by the plaintiff to collect commissions which he claimed to be due him on orders procured by him and accepted by E.M.C. before September 1, 1945, and on orders which he subsequently procured between September 1, 1945, and November 7, 1945.

In its answer the defendant denied liability in any amount, denied that it had made, as alleged in the plaintiff's complaint, an agreement that the plaintiff should continue in its service as its agent and representative in the Chicago area, receiving pay on orders accepted and filled by it at the rate of six per cent.

We shall first consider the contention of the defendant that there was no new consideration for the agreement dated August 31, 1945. In its twelfth finding of fact the trial court found that on the first day of September, 1945, an agreement was entered into by its president, Ray T. Haas, as agent, with the Electric Motor Corporation, whereby, among other things, the defendant corporation for a good and valuable consideration agreed to pay all commissions due salesmen at the prevailing rates on all orders received by Electric Motor Corporation on or prior to the 31st day of August, 1945, and subsequently shipped and collected for by the defendant corporation. This finding refers to the obligation of the defendant under the provisions of paragraph 10 of the contract, already set out.

Defendant's contention that there was no consideration for the contract dated August 31, 1945, is based on the proposition that it modified the option which defendant had accepted, and therefore there must be a new consideration to sustain it, there being no new consideration, that the contract is not a valid agreement. The defendant asks us to reconsider our prior decisions to the effect that no new consideration is required where a valid contract is modified by subsequent agreement between the parties on the ground that the holding is contrary to the great weight of authority.

It is our conclusion that the question sought to be raised by the defendant is not presented by the record. There was no prior integrated contract to be modified. The option provided that a payment of $9,900 should be made at the time of acceptance and no such payment was made. E.M.C. contended prior to the time of the execution of the contract dated August 31, 1945, that there was no valid contract. It is clear that the parties, without the payment of $9,900 being made, entered into further negotiations.

Not having made the down payment at the time of acceptance and having entered into further negotiations the transaction when completed rested upon the bill of sale made by E.M.C. to the defendant, and the contract executed and delivered contemporaneously therewith.

In the bill of sale which transferred the title from E.M.C. to Ray T. Haas, agent of the defendant, we find the following recital:

"For and in consideration of the sum of one dollar and other good and valuable consideration, . . . lawful money of the United States, to it in hand paid, at or before the ensealing and delivery of these presents by Ray T. Haas, agent, . . . the receipt whereof is hereby acknowledged, has bargained" etc.

The claim of the defendant that a new consideration was necessary to the validity of the contract dated August 31, 1945, cannot be sustained. The bill of sale and the contract, having been executed and delivered contemporaneously, must be construed together and when so construed it appears that there was ample consideration for the contract dated August 31, 1945, and it is therefore a valid contract.

The defendant next contends that the plaintiff is not a third-party beneficiary of any contract upon which it became liable to him for a commission. The trial court found that the E.M.C. agreed to pay and did pay the plaintiff a commission of ten per cent of the build-up price or nine and nine-tenths per cent of the sales price on each motor and five per cent of the

build-up price, or four and seventy-six hundredths per cent of the selling price on each rheostat ordered from the New York territory while he was its sales representative in that territory, and that said commissions were paid by E.M.C. when the merchandise was shipped and paid for by the customer. The finding is sustained by the evidence. The liability of the defendant depends upon the interpretation and validity of paragraph 10 of the agreement entered into between E.M.C. and the defendant on August 31, 1945. By that agreement the defendant assumed and agreed to pay "all commissions due salesman at the prevailing rates on orders received by Electric Motor Corporation on or prior to this date, and subsequently shipped by party of the second part and collected therefor. Rates to mean those paid at time of taking orders." The defendant contends that it is not liable to the plaintiff under this clause, because, first, the plaintiff was not a third-party beneficiary of the contract dated August 31, 1945; second, any percentage of sales paid to plaintiff by E.M.C. prior to September 1, 1945, was paid not as a true sales commission but in order to siphon off part of the profits of the business to a member of the family group which owned substantially all of the capital stock; third, defendant never assumed or became a party to any obligation to pay sales commissions to the plaintiff on orders taken after September 1, 1945.

Whether it was intended that the plaintiff should be a third-party beneficiary to the contract depends upon the terms of the contract. Paragraph 5 of the contract dated August 31, 1945, provides that the defendant shall assume responsibility for "the payment of any bills that may be submitted by Attorney Samuel Bitterman of New York or by Peter Voorlees, I. H. Dunham, Midwest Sales Corporation or Merchants Delivery Company because of agreements or leases presently in existence between said parties and Electric Motor Corporation."

It is undisputed that at the time of the transfer I. H. Dunham was acting as general manager, that he was also an engineer

and had rendered services to E.M.C. as such, but however that may be, when, before delivery, his name was crossed out of paragraph 5, the plaintiff ceased to be a party and the instrument as delivered created no liability on the part of the defendant for any bills which might be presented by I. H. Dunham to the defendant.

The contract must be construed as if his name had not appeared in paragraph 5. The erasure did not affect paragraph 10, which as already stated, provides that the defendant should pay all commissions due salesman. The court found, and there is abundant evidence to sustain the finding, that I. H. Dunham performed services as salesman for E.M.C. for which he received compensation at the rate stated in the finding of the court.

Some importance is attached to the fact that the word "salesman" is in the singular instead of the plural. It is considered that it must be construed as if it read, "pay all commissions due any salesman." Each salesman that E.M.C. in fact had was a "salesman" and if commissions were due any salesman as such the defendant agreed to pay them at the rates which were in force at the time of taking the orders. This last clause was inserted evidently because there had been considerable discussion in regard to commission rates, more particularly with reference to the future. The officers of the defendant knew before the execution of the contract that persons who were not salesmen in fact had received payments.

We shall not enter into a philosophical discussion in regard to the difference in meaning between motive and intent. When a party assumes and agrees to pay a salesman he must be presumed to have intended to do so. The defendant has never attempted to reform the contract. In this case the plaintiff claims nothing but his commissions due him under paragraph 10, and commissions due him for services rendered after September 1st as a salesman.

The defendant next contends that it entered into no agreement with the plaintiff respecting orders obtained and filled

after September 1, 1945. It is true that at the time the arrangement was made it did not cover the rate of commission to be paid. While there is conflicting evidence upon the point the trial court found in accordance with the contention of the plaintiff that an agreement was entered into between plaintiff and defendant for commission on orders received from the Chicago territory after September 1st, the commission should be six per cent, and the court allowed the plaintiff commissions at that rate on orders received after September 1, 1945. It appears that while Mr. Lyons, the general manager of defendant, desired to have the plaintiff continue his services as a salesman they did not agree upon the commission rate. The matter of commission was submitted to the board of directors which refused to authorize a commission of six per cent. It appears without dispute that orders secured by the plaintiff were accepted, filled, and collected for by the defendant, and the court found that on October 27th the defendant agreed to pay the plaintiff on all orders accepted by the defendant from his territory, a six per cent commission, which was the rate paid other salesmen for like services. Apparently the court applied that rate on all orders received from the plaintiff between September 1 and November 7, 1945, although the plaintiff claimed that the agreement was not to be retroactive. The court held against that contention and correctly applied the rate to the entire period. It was the contention of the plaintiff that the defendant agreed to pay him the same commission on orders taken after September 1st that he had received on orders on file with E.M.C. on August 31st. The trial court held against him on that contention.

Referring now to the orders on file at the time of the transfer on September 1, 1945, the plaintiff on his motion to review contends that he is entitled to recover for orders accepted by E.M.C. although such orders were not shipped or collected for by the defendant. Upon this proposition the court found that the plaintiff was entitled to commission only on those or-

ders received by E.M.C. on or prior to the first day of September, 1945, and subsequently shipped and collected for by the defendant corporation. This is a correct interpretation of paragraph 10 of the contract of September 1st. The liability under the contract is not the liability of a principal to an agent for procuring orders. Its liability is limited to liability to the plaintiff under the contract dated August 31, 1945, which clearly provides that commission is to be paid only on those orders subsequently shipped by the party of the second part and collected for. The defendant did not agree to fill the orders.

The defendant next contends that a compulsory reference was improper under sec. 270.34, Stats., for the reason that the items of commission sought to be recovered did not arise from transactions between the plaintiff and the defendant. This, it seems to us, is a wholly untenable position. The defendant being liable under its contract with E.M.C. to take over and pay commissions on orders in accordance with the terms of the contract which had been received and accepted by E.M.C., the defendant stands in the same relation to the transactions so far as accounting is concerned between itself and the plaintiff as E.M.C. stood. The contention of the defendant is probably based on its claim that the plaintiff is not a third-party beneficiary to the contract. It is considered that this proposition needs no further consideration.

It is also contended that the referee exceeded his authority with respect to commissions from orders taken at points not conceded to be in the Chicago territory, and on motor parts. It appears that on the hearing of the motions to alter and modify the referee's report it was called to the attention of the court that there were objections to certain findings of the referee on the ground that they were claimed to be beyond the scope of the reference. The court then advised the parties that in its opinion they would either have to consider the matter on the basis of a voluntary reference or set the matter for hear-

ing before the court and again present the testimony which had been presented before the referee.    After a discussion by counsel and the court the following stipulation was entered into between the parties:

"It is hereby stipulated by counsel for the respective parties that all of the testimony in the record under the reference be made part of the record of the court in this case; that the court may use such testimony in determining or passing upon the findings of the referee on any matters that may be deemed beyond the scope of the reference; said report of the referee shall, on those matters considered by the referee on which testimony was taken which were beyond the scope of the order of reference, be considered in all respects as a voluntary reference by the parties.   The parties reserving the right, with the consent of the court, to offer such additional testimony as may be necessary."

If there was any error in ordering a compulsory reference it is considered that it was clearly waived by this stipulation. Certainly the defendant was deprived of no legal right of which it can complain.

The defendant contends that the trial court abused its discretion in refusing defendant's application for leave to file an amended answer.    The material part of the proposed amendment, following certain of the denials, is as follows:

"Defendant alleges that if any payments of ten per cent on alleged sales in the territory set forth by the plaintiff's complaint were paid to him by the Electric Motor Corporation, such payments were not made as a commission for sales as a salesman or manufacturer's representative, but were paid to him as part consideration for stock transferred by the said plaintiff to Allen H. Dunham and Charles Dunham in August of 1943, and further alleges that if any payments were made to the said plaintiff of ten per cent for any sales made by the Electric Motor Corporation, such payments were made to him under an agreement between the officers of the corporation, the plaintiff and other employees of the corporation for a distribution of the profits of the corporation, and that such contract for

payment and the payment of said money were illegal, void and of no effect."

The motion to amend was accompanied by an affidavit of defendant's counsel to the effect that some of the information and evidence supporting these allegations was obtained subsequent to the completion of adverse proceedings and conferences with witnesses that were not available to the defendant until within the last several days; that Ray T. Haas and Joseph Zoline, the president and secretary of the defendant company were not available to your affiant for the past several weeks because of their absence from the city, and that your affiant was not in a position to determine all of the facts upon which the defendant's defense is to be based until Ray T. Haas was available shortly before trial.

In disposing of the motion the court said:

"The court is of the opinion that the defendants had sufficient time to properly analyze and present their defense in their answer.

"The court recalls at the pretrial conference the court requested counsel to submit their issues and to present to the court before trial to aid the court in analyzing the issues involved; that was done by counsel for the plaintiff.

"The court cannot make a finding that due diligence was used and the court therefore denies the motion of the defendant to amend the answer as to the proposed amendment under the 12th paragraph setting up a distinct affirmative defense."

Counsel for plaintiff opposed the granting of the motion and made the following statement of facts to the court: Complaint was served November 16, 1945; answer was due December 6, 1945, time extended until December 18th; on November 23d an examination of Mr. George Lyons, general manager of the defendant, was to be held and at the request of defendants adjourned to November 24th. Mr. Lyons did not appear but Mr. Hansen was examined adversely. He was then the accountant or auditor working for the defendant. On Decem-

ber 5th there was held adverse examination of five witnesses among whom was George Lyons, which was adjourned to December 12th. Mr. Dunham's examination was held on March 27, 1946; notice of pretrial conference was sent out on March 21, 1946.

It also appears from the record that possession of the records of E.M.C. was delivered to the defendant on or about September 1, 1945, and that prior to the delivery and execution of the contract dated August 31st the defendant and its officers and employees had full access to the books of the company.

The court found that on and before September 1, 1945, the officers and agents of the defendant corporation knew what commission agreements were made by and between Electric Motor Corporation and the plaintiff and other sales representatives. It appears from the record that Haas, the president, and Lyons, the general manager at Racine, were told during the course of the negotiations which resulted in the bill of sale and contract, that the poor showing of the company on the books was due to payment of commissions to persons not rendering service as salesmen.

The trial of the case began June 4, 1946. The motion to amend was made on the afternoon of June 5th. The affidavit already referred to was accompanied by a lengthy statement made by counsel for the defendant. Whether a proposed amendment to a pleading shall be allowed is a matter largely within the discretion of the trial court, especially so when the application is made during the course of the trial to introduce a new defense or cause of action, and unless there is a clear abuse of discretion the determination of the trial court will not be disturbed. Under all the facts and circumstances disclosed by the record we cannot say that the trial court abused its discretion in denying the motion under the circumstances.

It is also considered that the defendant, with knowledge of the facts, having agreed by paragraph 10 to pay commissions at the rates paid at the time of the taking of the orders, it would

be precluded by the parol-evidence rule from showing the motives of the managers and officers of E.M.C. in fixing the commission rate at ten per cent. Having agreed to pay a specific amount, in the absence of an allegation of fraud inducing the agreement, the defendant is bound by the terms of the contract and may not vary its terms by parol evidence. The defendant by paragraph 10 not only agreed to pay the commissions due the plaintiff as salesman but agreed that the prevailing rate meant the rate being paid by E.M.C. at the time the orders were taken, thus making the contract definite and certain as to rate. The payments made were paid as commissions and were referred to as such, and the defendant agreed to pay plaintiff commissions at that rate. Motives or objectives of the officers of E.M.C. in fixing the commissions at that rate and in paying like amounts to persons other than salesmen, are immaterial. The court correctly sustained the objections to the evidence offered relating thereto.

We have carefully considered the record and questions raised and find no reversible error.

*By the Court.*—On defendant's appeal and plaintiff's motion to review, the judgment is affirmed.

FAIRCHILD, J., took no part.