HERCHELROTH, Plaintiff, v. MAHAR, Defendant: BELT, Defendant and Appellant: WOLPIN COMPANY, Defendant and Respondent.*

*September 7—October 3, 1967.*

* Motion for rehearing denied, with costs, on November 28, 1967.

142

For the appellant there was a brief by *Edward Nager* of Madison, attorney, and *George A. Jones* and *Mansfield, Sulzbach & Jones,* all of Detroit, Michigan, and *Robert R. Studt* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* all of Madison, of counsel, and oral argument by *Mr. Nager, Mr. Robert R. Studt,* and *Mr. George A. Jones.*

For the respondent there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland* of Milwaukee, attorneys, and *Edward D. Cleveland* of Milwaukee and *Harold M. Shapero* of Detroit, Michigan, of counsel, and oral argument by *Mr. Cleveland.*

HANLEY, J. Appellant nowhere in his brief argues in support of his appeal from the order denying his "motion for declaratory judgment" and motion for summary judgment, nor includes the order in his appendix. This portion of the appeal can, therefore, be dismissed. *Schaefer v. Bednarski* (1956), 271 Wis. 574, 74 N. W. 2d 191.

The respondent's cross complaint alleged that the truck in the accident "was under written lease" between respondent and appellant, which provided in part as follows:

". . . The lessor agrees to secure and pay for property damage and public liability insurance on the leased

equipment and to save the lessee harmless from any damage thereby during the duration of this agreement. . . ."

Appellant's first contention is that the above-stated language, which appeared in a rider to the parties' original lease agreement, does not impose liability on him for damages to a third person, incurred solely as a result of the negligence of the lessee-indemnitee because there is no clear and unequivocal language in the indemnification agreement so stated. He argues that his obligation was merely to procure liability insurance and to save respondent harmless from the result of its failure to do so. Appellant had in fact secured insurance but the carrier became insolvent after the accident and cannot apparently be looked to for indemnification.

The trial court held that the only interpretation that could be applied to the "save harmless" clause is that it provided for the indemnification of Wolpin, the lessee, in the event a third party sustained damage as a result of the leased equipment.

Generally, contracts providing for indemnification in the case of the indemnitee's negligence are considered valid and not contrary to public policy. *Mustas v. Inland Construction, Inc.* (1963), 19 Wis. 2d 194, 120 N. W. 2d 95, 121 N. W. 2d 274; *Hartford Accident & Indemnity Co. v. Worden-Allen Co.* (1941), 238 Wis. 124, 297 N. W. 436. Wisconsin, however, is one of the many states which favors strict construction of indemnity contracts. *Mustas v. Inland Construction, Inc., supra; Majestic Realty Co. v. Brant* (1929), 198 Wis. 527, 224 N. W. 743. In *Mustas* the indemnification agreements provided that the subcontractor assumes full responsibility and risk for damage in performance of the contract and agrees to hold the owner and contractor harmless from all claims "arising out of the subcontractor's operations" or, as alternatively stated in another paragraph of the agreements, "arising out of or in connection with the perform-

ance of the contract." The court there held that the indemnity contracts did not provide for indemnification for negligence caused solely by the indemnitee because of the lack of express provision to that effect.

Appellant in his brief cites several cases involving indemnity contracts which contain phraseology similar to the "arising out of the performance of the contract" language of *Mustas,* in which the courts held that absent clear and unequivocal language to that effect, the indemnitor is not bound to indemnify the indemnitee for the latter's negligence. *General Accident Fire and Life Assurance Corp., Ltd., v. Finegan & Burgess, Inc.* (6th Cir. 1965), 351 Fed. 2d 168; *Kansas City Power & Light Co. v. Federal Construction Corp.* (Mo. 1961), 351 S. W. 2d 741; *Pittsburgh Steel Co. v. Patterson-Emerson-Comstock* (1961), 404 Pa. 53, 171 Atl. 2d 185.

We are of the opinion, however, that there is a significant difference between the facts in those cases and the facts here for the reason that the intent of the parties here was to affect in some way the respondent-lessee's obligation to bear the cost of his negligent acts and that the dispute is concerning the extent to which the appellant assumed that obligation.

Appellant would be in a better position to avail himself of the strict construction rule here if he were able to show some purpose for the indemnity agreement other than to affect respondent's responsibility for his negligent acts. But here appellant admits that he was under some obligation to purchase liability insurance and thus to protect respondent from the consequences of his negligence at least to that extent. In fact, he contends he has fulfilled that obligation. Thus, the issue here is the effect of the language "and to save the lessee harmless from any damages thereby during the duration of the agreement" on the extent to which appellant has assumed the obligation to become responsible for the negligent acts of the lessee in the use of the leased vehicles.

Appellant urges that the above clause refers to the first clause in the indemnification agreement, "[t]he lessee agrees to secure property damage and public liability insurance on the leased equipment." The sense of the clause would then be, "The lessor agrees to secure and pay for property damage and public liability insurance on the leased equipment and, by so doing, to save the lessee harmless from any damage caused by operation of the leased equipment for the duration of the agreement." By this interpretation the second clause in the agreement is surplusage—an explanation of the reason for the purchase of insurance. This would be tenable only if the clause read "and thereby to save the lessee harmless from any damage during the duration of this agreement."

The word "thereby," however, appears after the word "damage," and the sense of the clause then is, "to save the lessee harmless from any damage caused by the operation of the leased equipment during the duration of the agreement." Read in light of the first clause where the parties could not have but intended that the insurance appellant was to secure and pay for was to protect the respondent from the consequences of his own negligence, the additional language would be meaningless and inoperative if it did not oblige appellant to indemnify respondent for consequences of his own negligent acts.

We believe the second clause was intended to indemnify respondent for consequences of his own negligent acts and that therefore the *Mustas Case, supra,* and the other cases cited by the appellant do not apply because they involved indemnification clauses containing broad and general language where the language would not be rendered wholly inoperative if the indemnitor was not required to indemnify the indemnitee for its sole negligence.

This construction of the clause is consonant with the rule of construction that a construction of the agreement which gives reasonable meaning to all provisions is preferable to one which leaves part of the language useless

or inexplicable or creates surplusage. *Goldmann Trust v. Goldmann* (1965), 26 Wis. 2d 141, 131 N. W. 2d 902, *Lauterbach v. Brown* (1959), 7 Wis. 2d 240, 96 N. W. 2d 605.

Appellant next contends that the dismissal of its cross complaint when none of the allegations were denied or controverted was error because of sec. 263.26, Stats., which states that:

"Every material allegation of the complaint, and of a counterclaim not controverted as prescribed, shall, for the purposes of the action, be taken as true. But the allegation of new matter in an answer not pleaded as a part of a counterclaim or of new matter in a reply is deemed controverted."

Appellant's cross complaint was against respondent for indemnity. Appellant, however, incorporated by reference all of his earlier admissions into his cross complaint whereby he admitted the lease provision which the trial court held required him to indemnify. Furthermore, the issue of indemnification was already raised by defendant-respondent's cross complaint and by defendant-appellant's answer thereto, which admitted the existence of the indemnity provision. The legal issue of the effect of the indemnity language was decided adversely to appellant. Appellant's cross complaint against respondent attempts to raise the same issue again. Since the issue was already effectively disposed of and since whatever error there was in no way prevented appellant from litigating any issue that he could not otherwise litigate, we do not think dismissal of the cross complaint without there being a responsive pleading was error. The purpose of sec. 263.13 and sec. 263.26, Stats., is to require the defendant to join issue under pain of otherwise admitting the truth of the allegations of the complaint. Here the issue raised by appellant's cross complaint had already been decided, and, therefore, no further pleading was required.

Appellant further claims that the trial court erred in not allowing him to amend his answer to defendant-respondent's cross complaint to deny that there was in effect a lease with an indemnity provision requiring appellant to indemnify respondent. Respondent's cross complaint against appellant alleged the existence and contents of an indemnity provision in a lease, which appellant in his answer admitted. Several counsel were involved at various stages for the appellant. Trial counsel for appellant argued to the trial court in support of his motion to amend the answer that the counsel who drafted appellant's answer to the cross complaint assumed respondent was relying on a lease dated December 15, 1959, the expiration of which, before the date of the accident, counsel was unaware of. He further argued that since it now appeared to him that respondent was relying on a different instrument, one dated July 1, 1960, amendment should be allowed also for the reason that there was an issue of fact as to whether respondent ever signed the latter instrument.

In reviewing trial court decisions on amendment of pleadings, it must be remembered that the matter is within the discretion of the trial court.

". . . Whether a proposed amendment to a pleading shall be allowed is a matter largely within the discretion of the trial court, especially so when the application is made during the course of the trial to introduce a new defense or cause of action, and unless there is a clear abuse of discretion the determination of the trial court will not be disturbed. . . ." *Dunham v. Howard Industries, Inc.* (1948), 253 Wis. 347, 360, 34 N. W. 2d 140.

Here appellant's trial counsel at least one month before trial called the attention of appellant's counsel in Detroit to the fact that the 1959 lease had expired before the date of the accident. He was overruled in his suggestion that an amendment of the pleadings be sought. As to the 1960 lease, appellant knew at all times that

he had in his possession evidence that respondent had not signed it; and yet appellant chose to stand on his admission of the indemnity clause and did not affirmatively seek to learn what instrument respondent was relying on. In his brief appellant claims respondent was relying on the 1960 lease and urges this as a vital reason why he be allowed to amend. But the fact is that respondent was relying on the admission in appellant's answer.

Considering that appellant must have known respondent, if called upon to declare its hand, could have been relying only on either the 1959 or the 1960 lease and that appellant knew his defenses to both and still persisted in its admission, the denial of the motion to amend was within the discretion of the trial court.

Appellant's final contention is that the trial court erred in not granting a new trial on the basis of newly discovered evidence. The requirements that must be met before a new trial will be granted on the ground of newly discovered evidence are set forth in *Estate of Teasdale* (1953), 264 Wis. 1, 4, 58 N. W. 2d 404. They are:

"1. The evidence must have come to their knowledge after the trial.
"2. They must not have been negligent in seeking to discover it.
"3. The evidence must be material to the issue.
"4. The evidence must not be merely cumulative to testimony introduced at the trial.
"5. It must be reasonably probable that a different result would be reached on a new trial."

The evidence as to the signature on the 1960 lease does not meet all of the standard tests for the granting of a new trial on newly discovered evidence.

As to the first test, although it may be conceded that neither Belt nor his lawyers had knowledge before trial of Mr. Wolpin's testimony concerning the signing of the 1960 lease, it is clear that Belt had knowledge of facts which satisfied him that Mr. Wolpin had not signed this lease. He has stated that he never received from Wolpin

a signed copy of such lease. He claims to have received a letter dated as early as February 15, 1961, in which the Wolpin Company said it would not sign the 1960 lease, and he has repeatedly stated in his "motion for declaratory judgment" dated September 27, 1965, and in subsequent affidavits and trial testimony that it was the 1959 lease, not the 1960 lease, which had been signed by the parties and which, therefore, was in effect on the date of the accident. During his adverse examination at the trial he declared that the 1960 lease was not in effect because it had not been signed by Wolpin and returned to him.

As to the test of materiality, Belt has not met this burden.

If Belt were allowed to amend his answer to deny that the alleged (and admitted) indemnity provision was in effect between the parties on March 2, 1961, he would not thereby create an issue as to the signing or effectiveness of the 1960 lease, for this lease was not alleged. Belt's proposed amendment would create, instead, an issue as to whether there was any written indemnity provision which bound the parties on the date of the accident, and if Belt were able to prove that the 1960 lease was not in effect, the crucial issue would be whether the indemnity provision in the 1959 lease (identical to that in the 1960 lease) still bound the parties. Since the 1959 lease contains a termination date of December 14, 1960, the evidence material to such issue would have nothing to do with the 1960 lease but would relate to the circumstances under which Wolpin continued to keep possession of the leased vehicles and to operate them in its business. Upon such evidence it would be determined whether there was such "holding over" as to keep the 1959 indemnity provision in force beyond the stated term of the lease.

With respect to the test of a change in result, we believe the proposed new evidence would not lead to a different result for the following reasons:

First, the mere proof that the 1960 lease was not in effect on March 2, 1961, would not change the court's finding as to the effectiveness of the alleged indemnity provision since that provision was not established with reference to the 1960 lease, but upon Wolpin's allegation and Belt's admission that the truck was operated under the quoted indemnity provision; secondly, if Belt were allowed to amend his answer to deny the existence of the indemnity, he would be bound by his admission during the testimony at the trial that the parties continued to operate under the 1959 lease which contained the identical indemnity provision; and, thirdly, even if Belt were permitted to escape the effect of such testimony at the trial, he has failed to show in what way the elimination of the 1960 lease could change the result.

There is no evidence, newly discovered or otherwise, which would tend to indicate that the parties operated any differently after the stated expiration date of the 1959 lease than before.

We cannot see where a different result would be reached if the 1960 lease were eliminated.

Respondent contends that even if he was not entitled to indemnification on the basis of the lease clause, under the provisions of sec. 344.52 (1), Stats., appellant Belt was directly liable to him for his damages.

Sec. 344.52 (1), Stats., provides as follows:

"(1). Whenever any motor vehicle rented for compensation outside this state is operated in this state, the lessor of such motor vehicle is directly liable for all damages to persons or property caused by the negligent operation of such rented vehicle unless, at the time when such damage or injury occurs, the operation of the vehicle is effectively covered by a policy of insurance which provides coverage at least in the amounts specified in s. 344.01 (2) (d) for property damage, personal injury or death suffered by any person on account of the negligent operation of such vehicle. The amount of liability imposed upon the lessor by this section in the absence of insurance coverage shall not exceed the limits

set forth in s. 344.01 (2) (d) with respect to the acceptable limits of liability when furnishing proof of financial responsibility. The fact that the rented vehicle is operated in this state contrary to any understanding or agreement with the lessor is not a defense to any liability imposed by this section."

Assuming but not deciding that Belt would have been liable directly to the plaintiff in this action because, although he had insurance, the insurer became insolvent, the statute is silent as to who ultimately bears the loss as between lessor and lessee. Since, as respondent contends, the purpose of the financial responsibility chapter of the Motor Vehicle Code is to assure response in damages, we think the ends of this section are satisfied when the judgment is paid and that a merely secondary liability is placed upon lessors when they fail to meet a stated condition, that of supplying effective insurance coverage. The coverage then is primarily for the benefit of the plaintiff and only incidentally for the benefit of the defendant-lessee. Thus, whether or not appellant complied with the requirements of the statute, he did not need to indemnify respondent on the basis of this statute.

We conclude that the motion for declaratory judgment and motion for summary judgment must be dismissed, that the respondent Wolpin is entitled to indemnification under the lease provision, that the trial court did not err in dismissing appellant's cross complaint against respondent, and that the trial court did not abuse its discretion in refusing appellant a new trial on newly discovered evidence.

Since the indemnity has been construed to cover Wolpin's litigation expenses, the trial court is authorized to determine the reasonable fees and expenses incurred by Wolpin in this action since May 25, 1966, and to add such additional fees and expenses to the judgment payable to Wolpin by Belt, together with interest on the original judgment from the date of its entry.

*By the Court.*—Judgment and orders affirmed and cause remanded for proceedings consistent with the opinion.