STATE, Respondent, v. ZDIARSTEK, Appellant.

*No. State 164. Argued January 6, 1972.—Decided February 1, 1972.*
(Also reported in 193 N. W. 2d 833.)

For the appellant there was a brief by *Fred A. Reiter* and *Smith, Smith & Roels,* all of DePere, and oral argument by *Mr. Reiter.*

For the respondent the cause was argued by *Robert D. Martinson,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

CONNOR T. HANSEN, J. Defendant's conviction is based upon an incident which occurred on May 12, 1970, at the Brown county jail.

A jailer testified that he came on duty as jailer at 7 a. m., at which time he began his regular procedure of placing razors in the cellblocks and opening the security gate in each block to enable the prisoners to shower and shave. The prisoners are then "locked out," *i.e.,* all the prisoners go into what is called a day room and both the individual cell doors and the security gate are locked. At approximately 8 :30 a. m. the jailer locked out the prisoners in cellblock 1 and proceeded to do the same in cellblock 2 where the defendant and other prisoners were confined. After opening the outer gate, the jailer noticed that the razor which is generally placed on the ledge of the security door was not there, but was lying on top of the sink. The defendant and another prisoner, Heard, were standing near the sink. The jailer requested the defendant to hand him the razor, which the defendant did, but defendant then grabbed his left forearm. Heard came over, grabbed the jailer's other arm, and the two prisoners attempted to pull him into the cellblock. The jailer pulled back, pulling the defendant and Heard with him out into the hallway where he slammed into a control panel. He was then turned around and pushed across the main hall where he hit against a doorjamb and fell to the floor in the washroom. He was struggling with the two prisoners when a sergeant came to his aid. The sergeant apparently managed to pull both prisoners off momentarily and then became occupied with Heard out in the hallway. Defendant then managed to remove the jailer's keys and ran down the hallway. The jailer ran after him and hollered

at one of the trustees to close the outer gate. The jailer further testified that at no time did the defendant attack him with the razor and he could not recall if defendant had struck, hit, kicked or jumped on him. The jailer sustained four broken ribs and a multiple fracture of his shoulder blade. His badge and keyholder had been torn off, his shirt had been ripped and he experienced severe pain along his right side and back. He was hospitalized for twenty days and was unable to return to work for three months.

The physician who treated the jailer at the emergency room at St. Vincent's Hospital, testified the jailer had four broken ribs and multiple fractures of his scapula or shoulder bone. He was of the opinion that slamming into a doorjamb could cause these injuries. He also testified it would require a good jolt to break the scapula.

The sergeant testified that at approximately 8:30 a. m., in response to a cry for help from the jailer, he ran down the corridor from the jailer's office to cellblock 2, where he observed the jailer in a sitting position with Heard and the defendant standing over him. He did not observe any punches being thrown or any kicking, only a lot of motion which gave the appearance that the men were fighting. The sergeant grabbed both prisoners and pushed them away but was then himself grabbed from behind, apparently by Heard, and pulled into the hall outside the washroom door, where he began struggling with Heard. He was able to free himself just as the defendant was running down the hall with the jailer's keys.

Defendant testified that he handed the razor to the jailer and then asked him if he was going to let him make a phone call or if he would contact a lawyer for him. The jailer replied, "I just haven't found time yet." Defendant then stated he wanted to make a phone call and grabbed the jailer by the shirt to get his attention. Defendant stated that he grabbed the jailer because his requests to

contact his attorney during the previous week had apparently been ignored. The jailer pulled back and the defendant went with him. Heard then came up from behind the defendant and grabbed the jailer. The backward motion pulled both the defendant and Heard with the jailer until he hit a doorjamb and fell to the floor. Defendant and Heard were standing over him and the jailer had ahold of Heard's foot. As defendant turned to escape, the sergeant entered the washroom and grabbed both him and Heard. Defendant then broke for the door and attempted to escape. Defendant further testified that he never hit the jailer or forcibly knocked him down.

On rebuttal, the jailer testified that the jail records indicated defendant had contacted his attorney on May 4th. He did not recall being asked by the defendant just prior to the incident to contact his attorney or of making a statement to the defendant that he would do so when he got time. He further stated that the impact with the control panel and the doorjamb resulted from being pushed by the defendant and Heard.

### Issues.

The following issues are raised on appeal:

(1) Whether the method of jury selection was constitutionally infirm;

(2) Whether the jury instructions were erroneous;

(3) Sufficiency of the evidence;

(4) Refusal to submit a lesser-included crime; and

(5) A new trial in the interest of justice.

### Manner of selecting jurors.

Defendant contends that the use of registered voter lists as a basis for selecting potential jurors resulted in an arbitrary and unconstitutional exclusion of younger

persons as potential jurors. In support of this contention, defendant asserts that it is common knowledge that most persons do not register to vote until many years after they are eligible therefor; furthermore, younger persons are more often excused by the court from jury duty than are older persons.

While the intentional and systematic exclusion of any identifiable group in the community which may be the subject of prejudice is constitutionally impermissible, the burden of such a showing is on the party challenging the manner of jury selection. *McKissick v. State* (1971), 49 Wis. 2d 537, 182 N. W. 2d 282; *State v. Bond* (1969), 41 Wis. 2d 219, 225, 163 N. W. 2d 601. In *Bond,* this court specifically approved a procedure for selecting prospective jurors based on poll lists. In the instant case, defendant relies on mere assertions, unsubstantiated by any facts. Therefore, the argument fails.

*Erroneous jury instructions.*

Defendant contends that certain portions of the court's instructions to the jury were misleading and erroneous. The first challenged instruction is that part of Wis J I—Criminal, Part II, 1220, which defines the element of intent:

"The third element of this offense requires that the defendant intended to cause bodily harm to (. . . . . .) (*or another*). The phrase 'intent to cause bodily harm' means the mental purpose to cause bodily harm to another human being (*or a belief that the act, if successful, will cause such harm to another even if the defendant does not desire that harm to occur*). The intent to cause bodily harm must exist at the time of the act causing bodily harm. The intent to cause bodily harm which is an essential element of battery is no more or less than the mental purpose to cause bodily harm (*or a belief that the act, if successful, will cause such harm even though the defendant does not desire that harm to occur*) formed on

the instant preceding the act causing such harm, or some-time theretofore, which continued to exist at the time of the act causing such harm."

This instruction was given at the specific request of the defendant and over the objection of the state. At one point during a conference over the proposed instructions, defense counsel did object to paragraph two of No. 1220 insofar as it failed to instruct that the acts of a defendant must be a substantial factor in causing the bodily harm. However, the court pointed out that No. 1220 did include such an instruction, which defense counsel acknowledged.

On appeal, defendant contends that the average juror equates the word "intend" with "desire." It is argued the jury is then faced with a dilemma because it is instructed, by the italicized portion of No. 1220, that "the defendant must 'intend' and that he can 'intend' even though he does not 'desire' to do so." Defendant suggests that the only way in which the jury can resolve this conflict is to conclude that if the defendant intended to do the act, but did not intend the harm and the act caused the harm, then the defendant must have intended the harm regardless of whether defendant foresaw or believed that such harm would result from the act. In support of this theory, defendant points out that the jury, on four occasions, requested further instructions and were reread the instructions on the four elements of battery, again on the second and third elements, and twice more on the next to the last paragraph of No. 1220.

However, a fair reading of the challenged portion of No. 1220,[1] requires a *belief* by the defendant that the act, if successful, will cause harm although no harm is intended. Thus the jury is entitled to find the requisite intent in two situations: (1) Where the defendant intends the harm, or (2) where the defendant believes that the act, if successful, will cause harm even though the

---

[1] *See* sec. 939.23, Stats.

harm is unintended. In the first situation it is the resulting harm which is intended; in the second situation it is the act which is intended, the natural and probable consequences of which is the harm. We find no error in this instruction.

Defendant's next contention concerns the definition in No. 1220 of "natural and probable consequences:"

"While this intent to do bodily harm must be found as a fact before you can find the defendant guilty of battery, it must be found, if found at all, from his acts and his words and statements, if any, bearing upon his intent. You cannot look into a man's mind to find out his intent. When there are no circumstances to prevent or rebut the presumption, the law presumes that a reasonable person intends all of the natural, probable, and usual consequences of his deliberate acts. If a person commits an act which is likely to cause bodily harm to another and which causes bodily harm to that person, or another, then, when there are no circumstances to prevent or rebut the presumption, the legal and natural presumption is that the resulting injury was intended."

The following addition to the instruction was timely requested by defendant (although not in the same form) but was denied by the trial court:

". . . 'The mere "possibility," as distinguished from "probability," of harm, is not sufficient to find legal guilt.' "

The standard instruction correctly states the rule of law, *State v. Carlson* (1958), 5 Wis. 2d 595, 604, 93 N. W. 2d 354; *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 80, 187 N. W. 2d 823; and no error can be predicated on the failure to instruct the jury on "possibilities."

*Sufficiency of the evidence.*

Defendant asserts that the evidence on intent and cause was insufficient to prove the defendant's guilt beyond a reasonable doubt. Defendant states in his brief:

". . . It appears that present law requires that the burden of proof the State is required to meet in a criminal case is not only to prove that the evidence is consistent with the guilt of the defendant, but also that it is inconsistent with any reasonable inference of his innocence."

It is argued that the proven acts of the defendant were wholly insufficient to cause the harm which resulted, leaving open the inference that the injuries were caused almost entirely by the acts of Heard. It is also argued that the evidence allows the inference that defendant's intent was to escape—not to cause harm. The defendant attempts to support this assertion by the fact there was no evidence of kicking or punching by the defendant and that the defendant could easily have attacked the jailer with the razor, but did not do so.

We are of the opinion that defense counsel has misinterpreted the test. In *State v. Chacon* (1971), 50 Wis. 2d 73, 76, 183 N. W. 2d 84, this court stated:

". . . It is quite true that if the testimony of the defendants were believed, a reasonable hypothesis consistent with their innocence would be established; but that is not the test. All the credible evidence must be reconciled or some testimony must be rejected as incredible. Here, the trial court rejected the defendants' evidence, which it had a right to do."

If defendant's suggested rule of law were correct, it would require the jury to believe all the testimony adduced at trial. Such a result would eliminate the main function of the jury—to resolve conflicts in the testimony and to determine which evidence is credible or worthy of belief. Credibility of witnesses lies within the exclusive province of the trier of fact. *Quinn v. State* (1971), 50 Wis. 2d 96, 99, 183 N. W. 2d 61. It is only where the evidence on which the trier of fact has relied can be held incredible as a matter of law that this court will overturn a jury determination. *See Austin v. State* (1971),

52 Wis. 2d 716, 190 N. W. 2d 887. In the instant case, the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379, cited with approval in *Austin v. State, supra; Zebrowski v. State* (1971), 50 Wis. 2d 715, 723, 185 N. W. 2d 545; *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183.

*Refusal to submit a lesser-included offense.*

Prior to the submission of the case to the jury, defense counsel requested that the trial court give an instruction on the offense of resisting or obstructing an officer as that crime is defined in sec. 946.41, Stats. Defendant asserts that the denial of this request constitutes reversible error.

In considering defendant's assertion, it is first necessary to determine whether or not the crime of resisting or obstructing an officer is an included crime of battery to a peace officer. The definition of included crime as applicable to the instant situation is found in sec. 939.66, Stats.:

"(1) A crime which does not require proof of any fact in addition to those which must be proved for the crime charged; . . ."

The elements which must be proven to sustain a conviction for battery to a peace officer were stated by this court in *State v. Caruso* (1969), 44 Wis. 2d 696, 703, 172 N. W. 2d 195, and reaffirmed in *State v. Helnik* (1970), 47 Wis. 2d 720, 723, 177 N. W. 2d 881:

" '(1) Causing bodily harm to a peace officer or fireman;

" '(2) The peace officer or fireman is acting in his official capacity;

" '(3) Where the person knows or has reason to know that the victim is a peace officer or fireman;

" '(4) Where the act is done with intent to cause bodily harm;
" '(5) Without the consent of the person so injured.' "

The requirement that the defendant know or have reason to know that the peace officer is, at the time, acting in his official capacity is not an element of the offense described in sec. 940.205. *State v. Caruso, supra,* page 702. On the other hand, such a requirement is an element of sec. 946.41, which provides:

"946.41 **Resisting or obstructing officer.** (1) Whoever knowingly resists or obstructs an officer while such officer is doing any act in his official capacity and with lawful authority . . . ."

The elements of this offense are:

"First, that the defendant (*resisted*) (*obstructed*) an officer.
"Second, that the officer was doing an act in his official capacity and with lawful authority.
"Third, that the defendant (*resisted*) (*obstructed*) the officer, knowingly; that is, that the defendant knew or believed that he was (*resisting*) (*obstructing*) the officer while the officer was acting in his official capacity and with lawful authority." Wis J I—Criminal, Part II, 1765.

Because resisting or obstructing an officer requires the proof of this additional element (knowledge by the defendant that the officer was acting in his official capacity), resisting or obstructing an officer is not a lesser-included crime of battery to a peace officer.

Even assuming such is a lesser-included crime, defendant has no absolute right to demand the jury be instructed thereon. The test is whether, upon a reasonable view of the evidence, it is doubtful that the greater offense has been committed, *State v. Melvin* (1970), 49 Wis. 2d 246, 252, 181 N. W. 2d 490; or to express it another way, there exists a reasonable basis for a conviction on the lesser charge and acquittal on the greater charge. *Zebrowski v. State, supra,* page 729. A reasonable view

of the evidence clearly supports the conclusion that the crime alleged in the information was committed.

*New trial in the interest of justice.*

From our examination of the record, we conclude that no error occurred during the course of trial and that there is no apparent probability justice has miscarried. Therefore, no basis exists for the granting of a new trial in the interest of justice. *See Woodhull v. State* (1969), 43 Wis. 2d 202, 168 N. W. 2d 281; *Belohlavek v. State* (1967), 34 Wis. 2d 176, 180, 148 N. W. 2d 665; *Lock v. State, supra,* page 118.

*By the Court.*—Judgment affirmed.