CELMER, Respondent, v. QUARBERG and another, Appellants.

*No. 196.    Argued October 4, 1972.—Decided January 3, 1973.*
(Also reported in 203 N. W. 2d 45.)

582

For the appellants there were briefs by *Jack Harvey,* city attorney, and *Edward A. Krenzke,* deputy city attorney, and oral argument by *Mr. Krenzke.*

For the respondent there was a brief by *Schoone, McManus & Hanson, S.C.,* of Racine, and oral argument by *Martin I. Hanson.*

CONNOR T. HANSEN, J. We consider it desirable to set forth the facts in considerable detail.

September 15, 1969, the intelligence unit of the Racine police department received information of a quantity of marijuana, cut and drying, in a barn on what was known as the "Shanley farm." One of the officers testified the quantity to be about 300 pounds and was of the opinion that whoever was processing the marijuana was very knowledgeable about the process. It was estimated that the retail value was approximately $200,000. The photographs of the buildings and immediate vicinity, contained in the record, reflect that the area surrounding and approaching the barn was heavily overgrown with brush and foliage and it would appear the building and immediate area had not been used for agricultural purposes for quite some time.

On the morning of September 16th, three officers positioned themselves on "watch" at the Shanley farm. Investigator Hansen and Cadet Wieland were in the loft of the barn where they could make observation through the sideboards. Hansen was thirty-one years of age, had been a member of the Racine police department eight years, and for six of those years had been with the intelligence unit. Wieland was not yet twenty-one years of age and therefore could not be a member

of the department or carry a firearm. The defendant, Quarberg, was the third officer. He concealed himself in some brush and overgrowth near the road leading from the main-traveled highway to the farm buildings. Quarberg was twenty-nine years of age, had been a member of the police department six years, and a member of the intelligence unit five or six weeks.

None of the officers were in uniform or wearing a police badge. Quarberg had long hair, a mustache, long sideburns, and at least a twenty-four-hours' growth of dark beard. He was wearing denim jacket and trousers. He testified that his general appearance was designed to "blend more with subculture, the type of person who normally is associated, figured to be associated, with narcotics."

Plaintiff was fifty-three years of age, a life-long resident of Racine, who had been employed as a bridge tender by the city for eighteen years. He had been married thirty-one years. They had a family of seven children, ages twelve years to thirty years. A fifteen-year-old son had racing pigeons. Plaintiff took them out for exercise several times a week so that they might win races. The pigeons were transported in a special carrying case in the car trunk. After the incident which precipitated this litigation, at least one of the officers observed the plaintiff return the pigeons to their cage at the plaintiff's residence.[1] Plaintiff had been to the Shanley farm the day before to release the pigeons. On this occasion, he entered the barn and observed some old horse collars and hames. He had been collecting antiques off and on for about ten years. On the morning of September 16th, he again returned to the Shanley farm with the pigeons in the trunk of his car. The driveway into the farm formed a "Y" a short distance from

---

[1] Shortly after the incident at the Shanley farm, the officers arrived at the plaintiff's residence and escorted him to the hospital for emergency treatment.

the road. Plaintiff parked his car on the right, or north, and before releasing the pigeons again went to the barn. As he approached the barn, for some unknown reason, he became apprehensive about again entering it. He may have heard a noise. At any rate, he did not enter it but turned and went back toward his car. He testified he jogged; that he had been jogging for exercise whenever he could for about the last two years. Prior to that he did other forms of exercise. The officers testified he ran back toward the car.

Immediately, the officers reacted. Quarberg followed the north branch of the "Y" and arrived at the car ahead of the plaintiff. The other officers left their positions in the loft of the barn.

Emerging from the brush, the plaintiff, upon arriving at his car, was confronted by Quarberg, who was crouched in front of the plaintiff's car with a pistol in in each hand. There is a dispute in the evidence as to what happened in the next twenty–thirty seconds.

Plaintiff testified Quarberg said nothing until plaintiff reached for the door to his car. At that point, plaintiff testified, Quarberg said something in the form of "get away from that door." Quarberg then kicked the door shut. Quarberg then said something, but plaintiff testified that it was too softly spoken and he could not understand what it was. Plaintiff testified that Quarberg told him to put his hands on the car but he did not do it, in that he felt Quarberg was a "crazed farmer." Plaintiff continued to testify stating that Quarberg, at this point, struck the plaintiff in the head with the butt of his pistol. Plaintiff testified he jumped into his car, locked the doors, and backed down the driveway onto the road. While he was backing down the driveway, plaintiff heard shots being fired. Plaintiff, on cross-examination, testified he never saw any police identification; that Quarberg never said he was a police officer; that Quarberg had at all times two pistols in

his hands, and that plaintiff saw no one else on the farm. Plaintiff drove 15 miles to his home in Racine, despite two flat tires which resulted from Quarberg's pistol shots.

Quarberg testified he yelled at plaintiff to "hold it," holstered one of his guns, pulled out his police badge, and told plaintiff that he was a police officer. Quarberg testified he told plaintiff to put his hands on the car but plaintiff reached for the door and defendant had to kick it shut. Quarberg went on to testify that, suddenly, plaintiff jerked the driver's car door open, thereby striking Quarberg, and started to dive into the car. Quarberg testified he reached over the car door and struck the plaintiff on his head to prevent his escape but plaintiff, nevertheless, managed to get inside the car, lock the doors, and back down the driveway. Quarberg again testified that he showed the plaintiff his badge and shouted his identity as a police officer. Plaintiff failed to stop and Quarberg attempted to prevent his escape by shooting at the tires of the car.

Officer Hansen testified he was within a few feet of plaintiff's car as he backed out of the driveway, shouting his identity as a police officer and displaying his identification. Cadet Wieland corroborated the testimony of both Quarberg and Hansen.

The whole incident took place in a very short period of time. One officer testified the car was in the driveway two to three minutes. It was parked 75 to 100 feet from the barn. Before Officers Hansen and Wieland could get to the car, they heard Quarberg firing, which means that the plaintiff had already gotten into his car, locked the doors and started it in motion.

Following the trial, the court determined, as a matter of law, that Quarberg had probable cause to arrest the plaintiff and that excessive force was not used. After consultation with counsel, the trial court concluded the only theory upon which the case could be submitted to

the jury was that of negligence in the manner of arrest, and the case was so submitted.

## Issue.

As we view this case, the issue is: Should a police officer, operating in disguise, although acting in the line of duty, who confronts a citizen who has no reason to know of the officer's official identity, be held civilly liable for the failure to make a reasonable effort to inform the citizen of his identity?

The jury determined that the plaintiff's personal injuries and damage to his car had a direct causal relationship to Quarberg's negligence. It further determined Quarberg was negligent because of his failure to make a reasonable effort to inform the plaintiff of his identity as a police officer. Plaintiff's lack of knowledge that Quarberg was an officer was determined by the court and jury to be the causal factor of the events that followed and the injuries sustained. The resolution of these issues rests upon factual determinations which are within the province of the jury, and there is credible evidence to support the jury's findings. Based upon the evidence adduced at the trial, there is nothing in the record to indicate that the plaintiff actually knew of the presence of the marijuana.

Certain rights and privileges are justifiably granted to a police officer in his relationship to the public. These rights and privileges do not attach to the police officer as a private individual but to his identity as a police officer. The rights and privileges of a police officer have legal effect only in those instances in which he, accompanied by his identity as a police officer, approaches the private citizen. Where the officer's identity is concealed by a deliberate disguise, such as in this case, the private citizen has the right to look upon that person so confronting him as he would any other private citizen.

The fundamental importance of the private citizen's knowledge that the person facing him is in fact a police officer is demonstrated in 67 C. J. S., *Obstructing Justice,* p. 51, sec. 5, which states in part:

". . . As a general rule, in order to constitute the offense of resisting or obstructing an officer it is essential that accused have knowledge that the person obstructed is an officer; and consequently it is incumbent on an officer, seeking to make an arrest, to disclose his official character, if not known to the offender; . . ."

The legislature has also sought to increase the security of the peace officer from bodily harm and has rated battery to a peace officer a more serious infraction of the law than battery to a private citizen, by the provisions of sec. 940.205, Stats. However, a private citizen who commits a battery upon a police officer does not incur the additional penalty unless he knows or has reason to know that the person confronting him is, in fact, a peace officer and not another private citizen.[2]

When a person has no reason to know the officer's status or identity as a peace officer, and the officer has made a deliberate effort to conceal his identity, the officer must make a reasonable effort to inform the person of his status as an officer. In the instant case, the plaintiff was confronted with a person who had a pistol in each hand and because of his grooming and dress appeared to be a "crazed farmer." Under the facts of this case, the plaintiff was entitled to resist and he had every right to flee from what appeared to be a serious attack upon him by another private citizen. Such would not be the situation in the case of a uniformed police officer or a plainclothes detective.

[2] Sec. 940.205, Stats.; *State v. Helnik* (1970), 47 Wis. 2d 720, 177 N. W. 2d 881; *State v. Caruso* (1969), 44 Wis. 2d 696, 172 N. W. 2d 195; *Williams v. State* (1969), 45 Wis. 2d 44, 172 N. W. 2d 31.

Quarberg had the duty to make a reasonable effort to inform the plaintiff of his identity as a peace officer before Quarberg exercised the rights and privileges of that identity. After weighing the evidence and the credibility of the witnesses, the jury found that Quarberg had failed to act in a reasonable manner when he either failed or inadequately attempted to inform the plaintiff as to his status or identity. There is credible evidence to support such a determination.

This court, in *Huebner v. State* (1967), 33 Wis. 2d 505, 516, 147 N. W. 2d 646, as reaffirmed in *State v. Doyle* (1968), 40 Wis. 2d 461, 162 N. W. 2d 60, stated:

". . . The central idea of an arrest is the taking or detaining of a person by word or action in custody so as to subject his liberty to the actual control and will of the person making the arrest. *State v. Phillips* (1952), 262 Wis. 303, 308, 55 N. W. (2d) 384. The same result is reached by a voluntary submission to such custody. But there must exist the intent to take into custody *and a corresponding understanding by the person arrested that he is in 'custody,'* although no formal declaration of arrest is required. 5 Am. Jur. (2d), Arrest, p. 695, sec. 1. *Peloquin v. Hibner* (1939), 231 Wis. 77, 84, 285 N. W. 380. . . ." (Emphasis added.)

A person is not under "arrest" and an officer is not attempting an "arrest," as such a definition relates to the flow of privileges therefrom, until the person knows or has reason to know the person attempting to restrain or restraining him is a peace officer. No particular declaration is required; the test, being one for the jury, requiring the officer, where the person does not know or have any reason to know of his official identity, to make a reasonable attempt to convey that fact. When the officer fails to so inform, yet exercises his privileges flowing from such an identity, the question of negligence arises.

Quarberg's failure to adequately identify himself, understandably caused plaintiff to flee. In the exercise of

such a right, plaintiff was injured. Quarberg is liable for the damages sustained by plaintiff.[3]

Defendants contend that the trial court erred in failing to submit the case to the jury on the sole issue of excessive force. They argue that after the court determined Quarberg had probable cause to arrest, Quarberg had the privilege to use force and the only remaining question would be whether he used too much. Defendants cite *Schulze v. Kleeber* (1960), 10 Wis. 2d 540, 103 N. W. 2d 560, as authority. The problem with this case and the other "excessive use of force" cases is that the injured party was aware of the identity of the other party as a peace officer. In the instant case, Quarberg was negligent, not in the use of force but in his failure to take the steps which would reasonably have prevented the need to use force in the first instance. Defendants are looking past the negligent act to the results. The trial court did not err in refusing to submit the case to the jury on the issue of excessive use of force.

## *Amendment of pleadings.*

Plaintiff, in his complaint, has in effect pled his cause of action as a negligent intentional tort. This is not possible. It further appears that the complaint, as relied upon by the defendants' answer, looked upon the cause of action as the intentional tort of assault and battery.

Following the reception of all the evidence, the trial court on its own motion amended the pleadings to conform to the evidence received, and submitted the case to the jury on the theory of negligence in the manner of arrest. Defendants contend that it was prejudicial error for the trial court to change the cause of action from that

[3] *See:* 60 A. L. R. 2d 873, for cases of other jurisdictions holding a police officer liable for his negligent acts causing personal injury or death while in the process of making an arrest.

of excessive use of force, or intentional tort, to one of negligence.

The applicable statute is sec. 269.44. Sec. 269.44 provides:

"**Amendments of processes, pleadings and proceedings.** The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

This court has stated that sec. 269.44 should be liberally construed. *Siedenburg v. Severson* (1971), 50 Wis. 2d 40, 183 N. W. 2d 35. Amendments to pleadings are within the discretion of the trial court, and a case will not be reversed on account of the ruling of the court thereon unless there has been a manifest abuse of discretion. *Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6; *Kuester v. Rowlands* (1947), 250 Wis. 277, 26 N. W. 2d 639.

Defendants contend the amendment of the pleadings prejudiced them in three respects. Each will be discussed separately.

Defendants argue they were prejudiced in that they had no opportunity to prepare and offer testimony to rebut the new theory.

As previously indicated, the theory of negligence ran to Quarberg's failure to make an effort to reasonably inform plaintiff as to his identity. Proof was admitted at trial, without objection, that Quarberg was negligent in this respect. Both sides presented extensive evidence as to Quarberg's appearance and whether, despite his appearance, his identity was conveyed to the plaintiff.

Evidence in this regard was exhaustive. Quarberg, Officer Hansen and Cadet Wieland all testified that Quarberg informed the plaintiff he was a police officer. The jury, as was its prerogative, did not believe them. The amended pleading states a cause of action arising out of the same transaction upon which Quarberg had notice in the original pleadings. At pretrial conference, one of the issues submitted by both sides was the legality of the arrest. The raising of such an issue should have put the defendants on notice as to whether plaintiff knew or had reason to know that Quarberg was a police officer. The defendants have not been prejudiced by this amendment to the pleadings.

Defendants' second contention is that they were prejudiced in that no instruction was given on the officer's privilege to commit an intentional tort and the extent to which he might use force.

Here defendants are again arguing that the case should have been submitted to the jury on the issue of excessive use of force. As previously indicated, defendants are looking past the attributable act of negligence to the results thereof. As amended, the complaint states a cause of action for the negligent act which caused the need to use force, not the use of force itself. The trial court ruled correctly. An instruction as to Quarberg's privilege to use force, an intentional tort, would be misleading and irrelevant to the issue presented.

Defendants' third contention is that they were prejudiced, despite their failure to present any requested instructions to the court, by the court's instruction on negligence being incomplete and erroneous in that it placed undue emphasis on the ordinary man standard rather than the more subjective test that should be accorded a police officer. Defendants point to the American Law Institute's Restatement, 1 *Torts* 2d, Arrest, p. 227, sec. 128, which states:

## "128. Actor's Manifestation of His Intention

"(1) Except as stated in Subsection (2), the arrest of another is not privileged unless the actor manifests to the other his intention to arrest him and

"(a) if the arrest is without a warrant, the offense or other conduct for which the arrest is made, unless the other, knowing the actor to be a peace officer, does not request such information;

". . .

"(2) None of the manifestations stated in Subsection (1) is required if the making thereof is reasonably believed by the actor to be

"(a)  dangerous to the actor or a third person, or

"(b)  likely to frustrate the arrest, or

"(c)  useless or unnecessary."

Defendants then direct this court's attention to comment on sub. (2), pp. 229, 230, which states:

". . . If an officer attempts to arrest or arrests another engaged in the commission of an offense or on fresh pursuit, the officer is not required to manifest the cause of the arrest. . . .

"If the actor reasonably believes that the other, if warned of the actor's intention to arrest him, will offer resistance which may defeat the arrest or will make a possibly successful attempt to flee, the actor is privileged to arrest the other without any of the manifestations which are usually required. So also, such manifestations are not required if the other's character is known or reasonably believed to be such as to make it likely that he will offer resistance threatening injury to the actor or a third person. Since no manifestation need be made where it is likely to defeat the arrest or to make it dangerous to the actor, . . ."

The issue of the officer's identity as a police officer should be distinguished from his intent to arrest or the cause of arrest. The general rules cited by defendants assume the citizen knows the actor is a police officer and from that defendants presume that in certain instances the citizen should be aware from the acts of

the officer of his intent to arrest, and that the officer does not arrest without reason. The knowledge or reason to know the person confronting the citizen is an officer is the foundation upon which the latter presumptions are built. However, the issue in the instant case is whether the citizen has reason to know the person confronting him is a police officer. It is incumbent upon the officer to make a reasonable effort to inform the citizen of his identity before the officer takes further action under that identity. This requires no particular declaration on the part of the officer and it need not be verbal. As in the instant case, where the identity of the officer was concealed, it is necessary for an officer to take reasonable action to inform the citizen of his identity. This does not require actual knowledge on the part of the citizen but merely a showing on the part of the officer that the citizen had a reason to know, or that the officer made a reasonable attempt to so inform the citizen of his identity.

The trial court also considered the matter of contributory negligence. It noted that counsel for the defendants had not requested a question on contributory negligence nor requested any instructions in regard thereto. In the proper exercise of its discretion and under the facts of this case, the trial court concluded it would be improper to submit a question of contributory negligence.

The jury in the instant case determined that Quarberg, groomed and attired as he was so as to conceal his identity as an officer, failed to make a reasonable effort to inform the plaintiff of his identity. It further found that the plaintiff sustained compensable injuries as a result thereof. Although there is a conflict in the evidence, the jury's resolution of the conflict is supported by credible evidence and on review it cannot be said that the jury's findings are against the great weight and clear preponderance of the evidence.

Defendants have shown no prejudicial error, and the trial court did not abuse its discretion.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. This is an action for assault and battery brought by the plaintiff against the police officer who placed him under arrest. Following the taking of testimony, the trial court found that as a matter of law there was probable cause for the arrest and that the officer did not use excessive force in arresting the plaintiff. These findings are unchallenged on appeal.

One begins diagnosis of the strange and strained conclusion reached by the majority with noting that every arrest involves some measure of force or restraint.[1] The arresting officer has not only the right but the duty to ". . . use such force as may reasonably be necessary in the enforcement of law and the preservation of order, and he is not civilly liable for such force exerted on the person of another."[2]

However, while the arresting officer is entitled and mandated to use such reasonable force as is necessary to carry out his duty to arrest, such officer ". . . is liable for assault and battery if on that occasion he

---

[1] ". . . There can be no arrest where there is no restraint or where the person sought to be arrested is not conscious of any restraint.

". . .

"The mere fact that an officer makes a statement to an accused that he is under arrest is not sufficient to complete the arrest. But if an officer having authority to make an arrest lays his hand upon the person of the suspect, however slightly, with the intention of taking him into custody, it is an arrest, even though the officer may not succeed in stopping or holding the suspect even for an instant. . . ." 5 Am. Jur. 2d, *Arrest*, pp. 695, 696, sec. 1.

[2] 6 Am. Jur. 2d, *Assault and Battery* [by a peace officer], p. 105, sec. 125. *See also:* 3 A. L. R. 1170; 42 A. L. R. 1200.

inflicts physical injury by using force not necessary to subdue the prisoner or to effect his incarceration, or unnecessarily subjects the prisoner to indignities of a physical nature. . . ." [3]

Here there was a striking of the plaintiff by the arresting officer and plaintiff's complaint alleged that the officer "used excessive force." Established, this would constitute a successful claim of assault and battery against the arresting officer. However, the trial court found, as a matter of law, that excessive force was not used by the arresting officer. No objection to such finding is made on appeal, and it disposes of any claim of right to prevail on the basis of battery against the arresting officer.

However, the plaintiff alleged in his complaint that the arresting officer "negligently used excessive force" in making the arrest. The majority concurs with the trial court that the single added word "negligently," prefacing the claim that excessive force was used, was sufficient to constitute the pleading of a separate and alternative cause of action for "negligence" on the part of the officer in making the arrest. So a judgment in "negligence" is sustained in an action for battery where battery was not proved.

There are a number of things entirely wrong with the salvage operation thus conducted.

As here used to describe or label the use of excessive force, the word "negligently" is inappropriately used. One does not "negligently" commit a battery. A battery is striking of the person of another by an aggressor ". . . done with the intention of bringing about a harmful or offensive contact . . . ." [4] An act of negligence is "a violation of the duty to use care." [5] When one uses a firearm with intent to kill, and succeeds, the

---

[3] *Id.* at page 106.

[4] 6 Am. Jur. 2d, *Assault and Battery*, p. 10, sec. 5.

[5] 57 Am. Jur. 2d, *Negligence*, p. 333, sec. 1.

crime is murder in the first degree,[6] not homicide by negligent use of a firearm.[7]

If stretched to hold that the plaintiff was alleging that the excessive use of force constituted either or both a battery and an act of negligence, there would have to be additional allegations of the essential elements of each cause of action, which are not stated in the alternative, in order to avoid a collision with this court's holding that ". . . Under the authorities, allegations in the alternative are fatally defective. . . ."[8]

If tortured beyond recognition to hold that the plaintiff, without so stating, was alleging two causes of action, one in battery, one in negligence, there is no way for court, jury or adversary counsel to know what was claimed to constitute negligence, separate and distinct from the battery complained of. The majority concludes the jury put out of mind the striking and tire shooting and found "negligence" in the officer not having promptly identified himself as a law officer. Asked during oral argument what act the jury had found to have been negligent, plaintiff's counsel answered, "Probably the officer having two guns, not one." What could be "negligent" about a police officer having two guns is hard to see, but, on this record, one guess is as good as another. There is no way to separate battery from "negligence" in pleadings, proceedings, jury instructions or jury verdict on this record in this case.

No matter how viewed or construed, the added word "negligently" is surplusage for the reason that there is no basis, or, at least, has not been up to now any basis for an action in negligence brought by a person lawfully placed under arrest against the police officer who arrested him. Nowhere, as far as this writer can find, is there

---

[6] *See:* Sec. 940.01, Stats.

[7] *See:* Sec. 940.08, Stats.

[8] *Pavalon v. Thomas Holmes Corp.* (1964), 25 Wis. 2d 540, 549, 131 N. W. 2d 331.

any authority for holding a police officer, making a lawful arrest and not using excessive force in so doing, liable in "negligence" for the manner in which the arrest was made. An arresting officer is liable in battery if he uses excessive force, and that is the sole basis and limit of his liability.

The majority cites no authority or precedent for its opening up a whole new area of potential police liability in making arrests. The reason for this is that there is no precedent or authority. In all fifty states, and in the federal courts as well, one searches in vain for an exposure of arresting officers to civil liability where the arrest was lawful and no excessive force was used. The majority puts two arrows, not one as before, in the quiver of all who would challenge the execution of an entirely lawful arrest.

Up to now, in this state, the law has been clear that a claim of civil liability of an arresting officer must be founded on a claim of battery or excessive force. Any accompanying claim of "negligence," this court has held, is "surplusage." This was made crystal clear in an action for damages for injuries suffered by an elderly plaintiff who was forcibly removed by a police officer from a public hearing in a city council chamber.[9] There plaintiff's complaint originally alleged that the police conduct constitued "gross negligence." Plaintiff moved to amend, striking out the words alleging "gross negligence." The amendment was granted with the condition that the defense would be permitted to present all affirmative defenses to ordinary negligence such as contributory negligence. As this court noted, "The form of special verdict reflected, in part, the theory that defendants were charged with negligence and, in turn, charged plaintiff with contributory negligence. . . ."[10] This cannot be done, *Schulze* held.

---

[9] *Schulze v. Kleeber* (1960), 10 Wis. 2d 540, 103 N. W. 2d 560.
[10] *Id.* at page 543.

In the *Schulze Case*, the parties sought to do exactly what the majority here does for one of the parties: Add the dimension of "negligence" to an action against a police officer for use of excessive force in making a lawful arrest. All questions in the special verdict relating to "negligence" were held by this court in *Schulze* to be "surplusage." [11] Said this court then: ". . . Once the jury determined that LeMoine used excessive force, the only remaining question pertinent to liability was whether the excessive force caused the injury." [12] Clearly, if the jury had found no excessive force was used, no question pertinent to liability would have remained.

If "negligence" had been accepted in *Schulze* as a basis for civil liability of a police officer in making a lawful arrest, it would follow that, in that case and this one, the negligence, if any, of the arrested person would also be material and an issue for the jury. [13] If a separate cause of action based on alleged and identified acts of "negligence" had been set forth in plaintiff's complaint in this case, defendant could have answered and counterclaimed under the comparative negligence law, [14] with the right to all affirmative defenses in an ordinary negligence action. The interest of justice would then, at the least, require reversal here and retrial to give defendant the right to responsively plead and assert defenses to the cause of action for "negligence," including raising the issue of negligent conduct on the part of the plaintiff.

---

[11] *Id.* at page 546.

[12] *Id.* at page 546.

[13] *Id.* at page 545, stating: ". . . For some reason (perhaps the type of insurance coverage available to defendants, or some similar consideration), the parties treated the use of excessive force as merely negligent conduct, and considered that the comparative-negligence statute would apply if plaintiff was negligent and the injury was caused by the conduct of both."

[14] *See:* Sec. 895.045, Stats.

However, by striking all references as to "negligence" in pleading, instructions or verdict as improper, this court, in *Schulze,* made clear that a police officer, in making a lawful arrest, is civilly liable only for battery or use of excessive force. This court dealt in *Schulze* with what it termed the applicable "theory of the case" against the police officer, stating:

". . . the mayor's order gave LeMoine [the police officer] the right to use force to remove Mr. Schulze [the plaintiff] from the council chamber. He was privileged to use whatever force was reasonably necessary to effect removal. If he used more force than reasonably necessary, it constituted an assault and battery. [Authorities cited.]" [15]

That is the law in every jurisdiction in this land, and, up to now, the law in this state. In the case before us, as in *Schulze,* the only basis for civil liability of the police officer, in making a lawful arrest, is that excessive force was used in making the lawful arrest involved. This is a claim of battery and the references to "negligently" in the complaint, instructions and verdict are indeed "surplusage."

The defendant's motion for directed verdict, in the light of the trial court's unchallenged finding that as a matter of law there was probable cause for the arrest and that no excessive force was used, should have been granted. The writer would reverse, directing that defendant's motion for directed verdict be granted and plaintiff's complaint dismissed upon the merits.

I am authorized to state that Mr. Justice BRUCE F. BEILFUSS and Mr. Justice LEO B. HANLEY join in this dissent.

---

[15] *Schulze v. Kleeber, supra,* at page 545.